UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES ROBERT BATES,

Plaintiff,                          Case No. 2:16-cv-14324
                                    District Judge Avern Cohn
v.                                  Magistrate Judge Anthony P. Patti

O'BELL THOMAS WINN, *et
al.*,

Defendants.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO
GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56(a) (ECF 33)**

**I.     RECOMMENDATION**:  The Court should **GRANT IN PART** and

**DENY IN PART** Defendants' motion for summary judgment.  (ECF 33.)

**II.    REPORT**

    **A.     Background**

        **1.     Factual Background**

Plaintiff James Bates (#54580-039) is currently incarcerated at Lompoc

Penitentiary in Lompoc, California.  *See* www.bop.gov, "Inmate Locator,"

(#54580-039).  On December 12, 2016, while incarcerated at Midland County Jail

in Midland, Michigan, Plaintiff filed the instant lawsuit under 42 U.S.C. § 1983,

alleging that Defendants O'Bell Thomas Winn, Warden of the Saginaw

Correctional Facility (SRF) in Freeland, Michigan, and James Roth, a now-retired Inspector at G. Robert Cotton Correctional Facility (JCF) in Jackson, Michigan, failed to protect him from assault by fellow inmates in violation of his Eighth Amendment rights.  (ECF 1.)

The underlying facts, as alleged by Plaintiff in his complaint, are as follows. On July 5, 2014, Plaintiff, then an inmate at SRF, was assaulted by fellow inmate Justin Schneider (#666563), a member of the gang "Gangster Disciples." (*Id.* at Pg. Id. 115-17, ¶¶ 7-8.)  While in segregation following this assault, Plaintiff observed fellow inmate Geoffrey Miller's (#687305) transfer out of SRF.  Miller, also a member of the "Gangster Disciples," had assaulted Plaintiff at SRF on October 17, 2013.  (*Id.* at Pg. Id. 116-17, ¶¶ 18-20.)  On July 17, 2014, then acting Warden Winn transferred Plaintiff from SRF to JCF.  Upon arrival at JCF, Plaintiff met with Inspector Roth, who noted that Plaintiff had been assaulted a couple of times and asked if he was okay.  Plaintiff responded by asking if there was a reason he would not be okay, which gave Roth an opportunity to inform Plaintiff that a lot of inmates were being transferred from SRF to JCF, and that he may be in danger. (*Id.* at Pg. Id. 115-17, ¶¶ 24-31.)  The next day, Plaintiff spotted Miller in the general population at JCF and immediately notified Roth, Assistant Resident Unit Supervisor (ARUS) Parsons and Correctional Officer Mills that Miller's presence put him in danger of another assault, but his concerns were ignored.  (*Id.* at ¶¶ 34-

2

36.)  Then, on July 24, 2014, Schneider was transferred from SRF to JCF and placed six cells down from Plaintiff.  (*Id*. at ¶ 37.)  Plaintiff notified the Parole Board of Michigan of Schneider's placement, and ARUS Parsons and Officer Mills removed Schneider from the unit on July 29, 2014.  (*Id*. at ¶¶ 38-40.)  But Miller remained with Plaintiff in the general population and the next day, July 30, 2014, two unknown individuals assaulted Plaintiff, resulting in physical and emotional injuries.  (*Id*. at ¶¶ 41-46.)  Plaintiff believes Miller orchestrated the assault by putting a "hit" on him.  (*Id*. at ¶ 43.)

On August 1, 2014, Plaintiff filed a grievance (JCF-14-08-1842-03b), complaining that he and Schneider had both been transferred to JCF after Schneider's assault at SRF, and that despite ARUS Parsons's removal of Schneider from Plaintiff's housing unit on July 29, 2014, and Officer Mills's assurance that he would be safe, he was again assaulted on July 30, 2014.  (ECF 33-3 Step III Grievance Report; ECF 35, Exh. A.)[1]  The Step I grievance form does not name Winn, Roth or Miller.  The Step I grievance response was issued on August 7, 2014.  It includes a summary of the investigation conducted and reads:

---

[1] Plaintiff filed a previous complaint on January 12, 2015, related to his assault at JCF, alleging both failure to protect and deliberate indifference to medical needs. (Case No. 15-cv-10109, ECF 1.)  But the District Court dismissed the complaint without prejudice for Plaintiff's failure to exhaust his administrative remedies because he did not await a decision on his Step III grievance appeal prior to filing suit.  (ECFs 39, 41 & 42 therein.)

> Based on the above information, one ARUS Parsons was notified by JCF's psychologist that both the assailant and the victim were housed in the same Unit, the prisoners were separated and a SPON was completed to ensure they will not be housed at the same facility again. Due to the fact that the Grievant was unable to identify the assailant(s) of the 7/30/14 assault, no SPON ~~can~~ was be generated. Grievant has since transferred to another facility and no further action will be taken at this time.

(ECF 33-3 at Pg. Id. 349; ECF 25, Exh. A.)

Plaintiff filed his Step II appeal on September 8, 2014. (ECF 33-3 at Pg. Id. 346; ECF 35, Exh. B.) On the form, he acknowledges the tardiness of the appeal, states in apparent reply to the Step I response that he never said Schneider was the individual who assaulted him at JCF, and complains that Roth failed to protect him from harm because Roth knew of the previous assaults as well as Miller's presence in general population at JCF, but did not warn him of the potential danger. (ECF 33-3 at Pg. Id. 346; ECF 35, Exh. B.) Then, it appears that before receiving a response at Step II, Plaintiff filed a "Step II/III" appeal also dated September 8, 2014, explaining that his Step II and III appeals were untimely because he was transferred out of JCF mid-grievance, and that he proceeded to Step III because he had not yet heard back regarding his Step II appeal. (ECF 33-3 at Pg. Id. 350-51; ECF 35, Exh. C.) Further, he complained that Winn ignored his safety by transferring him to the same prison as Miller and Schneider, who had both previously assaulted him, and that Roth knew he had been assaulted at SRF, but

4

failed to warn him that a lot of prisoners were being transferred from SRF to JCF. (ECF 33-3 at Pg. Id. 351; ECF 35, Exh. C.)

The Step II response, dated September 23, 2014, rejected Plaintiff's Step II appeal as untimely, and re-labeled his grievance as #JCF-14-08-1842-28e.  (ECF 35, Exh. B at Pg. Id. 391.)[2]  And the Step III grievance response, mailed on June 11, 2015, states:

> Your Step III grievance, including any materials included with your appeal from Step II, has been fully reviewed and considered by the Grievance Section of the Office of Legal Affairs in accord with PD 03.02.130, "Prisoner/Parolee Grievances".  The response you received at Step I reflects that your issue was in fact considered and appropriately investigated.  As there is no additional information or basis found for relief at Step III, the Step I decision is upheld at Step III.

(ECF 33-3 at Pg. Id. 345; ECF 35, Exh. C.)

### 2.    Instant motion

Defendants filed the instant motion pursuant to Fed. R. Civ. P. 56(a) on June 3, 2019, asserting the following bases for summary judgment: (1) Plaintiff failed to exhaust his administrative remedies because he named neither Winn nor Roth in his Step I grievance; (2) Plaintiff failed to establish that Defendants violated his Eighth Amendment rights by knowingly disregarding an excessive risk to his safety; (3) a claim under 42 U.S.C. § 1983 must be based on active

---

[2] This Step II response is not included as part of the Step III Grievance Report attached to Defendants' motion for summary judgment.

unconstitutional behavior, and Plaintiff has not shown that Roth was personally involved in the alleged improper actions with regard to Schneider; and (4) Defendants are entitled to qualified immunity.  (ECF 33.)  Plaintiff filed his response in opposition to Defendants' motion on July 17, 2019, arguing that he completed the grievance process and had a valid reason for the untimeliness of his Step II appeal, and that both Winn and Roth knowingly disregarded excessive risks to his safety.  (ECF 35.)  Finally, in their reply filed July 31, 2019, Defendants assert, in part, that the denial of Plaintiff's Step I grievance on the merits was upheld at Step III, so the untimeliness of the Step II appeal is of no consequence. (ECF 38 at Pg. Id. 432.)

### B.    Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted).  In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case . . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

7

The fact that Plaintiff is *pro se* does not reduce his obligations under Rule 56.  Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law."  *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion."  *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

### C.    Discussion

#### 1.    Defendants have failed to satisfy their burden of proof and establish entitlement to judgment as a matter of law with regard to Plaintiff's exhaustion of administrative remedies

##### a.    Exhaustion under the PLRA

Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e *et seq.*, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Congress enacted the provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit."  *Jones v. Bock*, 549 U.S. 199, 203-04 (2007).  Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]"  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures."  *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Jones*, 549 U.S. at 211.  The prison's grievance process determines when a prisoner has properly exhausted his or her claim.  *Id*. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of

proper exhaustion.").  Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court."  *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

The prisoner "may not exhaust administrative remedies during the pendency of the federal suit."  *Id*. (citations omitted); *see also Woodford*, 548 U.S. at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .").  However, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim."  *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017).

Finally, "inmates are not required to specifically plead or demonstrate exhaustion in their complaints."  *Jones*, 549 U.S. at 216.  Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA.  *Id*.  As such, defendants bear the burden of proof on exhaustion.  *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

### b.    Grievance procedures at the MDOC

Pursuant to Policy Directive 03.02.130, dated July 9, 2007,[3] the
administrative remedies available at the MDOC are as follows.  First, the inmate
must attempt to resolve issues with the staff member involved within two business
days of becoming aware of a grievable issue.  (ECF 33-2 at ¶ P.)  If the issues are
not resolved within five business days, the inmate may file a Step I grievance using
the appropriate form.  (*Id*.)  "Dates, times, places, and names of all those involved
in the issue being grieved are to be included."  (*Id*. at ¶ R.)  The inmate should
receive a response at Step I within 15 business days of filing the grievance.  (*Id*. at
¶ X.)

If the inmate is dissatisfied with the Step I disposition, or does not receive a
response by ten business days after the due date, he or she may file a Step II
grievance using the appropriate form.  (*Id*. at ¶ BB.)  As with Step I, the inmate
should receive the Step II response within 15 business days.  (*Id*. at ¶ CC.)

Similarly, if the inmate is dissatisfied with the Step II response or does not
receive a response by ten business days after the due date, the inmate may file a
Step III grievance.  (*Id*. at ¶ FF.)  The matter is fully exhausted after the disposition

---

[3] This policy directive was superseded on March 18, 2019, but was in effect when
Plaintiff filed the relevant grievance.  Thus, all references herein are to the 2007
Policy Directive.)

of the Step III grievance. *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

### c.   Analysis

As provided above, MDOC policy requires that inmates include the "[d]ates, times, places, and names of all those involved in the issue being grieved" in their initial grievance. (ECF 33-2 at ¶ R); *see also Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). Defendants assert that Plaintiff failed to exhaust his administrative remedies by not including their names in his initial grievance. (ECF 33 at 4-13; ECF 38 at 2.) In response, Plaintiff argues that he lacked access to Defendants' names at Step I as a result of being in segregation immediately following the assault at JCF. (ECF 35, Pg. Id. 379.) But he does not dispute, and there is no question that, he did not include Defendants' names at Step I, adding them instead at Steps II and III. (ECF 33-3; ECF 35, Exhs. A-C.)

However, "[w]hen prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." *Reed-Bey*, 603 F.3d at 325. Thus, if an inmate commits a procedural error, but receives merits-based responses at each step of the grievance process, the inmate has properly exhausted his claim. *Cook v. Caruso*, 531 F. App'x 554, 563 (6th Cir. 2013). Plaintiff received a merits-based response at Step I, albeit to an initial grievance that did not name Winn or Roth, and the response he

12

received at Step I was upheld at Step III.  (ECF 33-3 at Pg. Id. at 345 & 349; ECF 35, Exhs. A & C.)  On the other hand, his Step II appeal was rejected as untimely. (ECF 35, Exh. B.)  In his response to Defendants' motion for summary judgment, Plaintiff asserts what he believes to be a valid reason for its tardiness – that he was transferred mid-grievance to another prison (the same explanation provided in his Step III appeal).  (ECF 35 at Pg. Id. 379-80, Exhs. A, C, & D.)  And rather than contest Plaintiff's assertion, Defendants state, in their reply brief: "[Plaintiff] . . . now provides a reason why his Step II appeal was untimely but his Step I grievance was investigated and denied on the merits and that decision was upheld at Step III.  So any untimeliness at Step II is of no consequence."  (ECF 38 at Pg. Id. 432.)  Thus, Defendants essentially concede that Plaintiff's grievance was considered and denied on the merits, a fact which, if true, waives any procedural errors on which they base their exhaustion argument.  As a result, Defendants have failed to satisfy their burden of proof that Plaintiff did not exhaust his administrative remedies, and the Court should decline to grant summary judgment on that basis.  *Surles*, 678 F.3d at 455-56; *Stansberry*, 651 F.3d at 486.

## 2.    Plaintiff's Eighth Amendment Claims

Defendants next assert entitlement to summary judgment on the basis that Plaintiff failed to allege sufficient facts to support his Eighth Amendment failure to protect claims.  Under the Eighth Amendment, "prison officials must ensure that

inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). The Supreme Court has set forth two requirements to show a violation of the Eighth Amendment based on a failure to protect. "First, the deprivation alleged must be, objectively, 'sufficiently serious[.]'" *Farmer*, 511 U.S. at 834. That is, the inmate must show that "'he is incarcerated under conditions posing a substantial risk of serious harm.'" *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer*, 511 U.S. at 833). Second, the inmate must show that the prison official had "a sufficiently culpable state of mind," meaning that the defendant must be deliberately indifferent to prisoner health or safety. *Farmer*, 511 U.S. at 834. On the continuum of conduct, deliberate indifference is something greater than mere negligence and less than purposeful or knowing conduct—it is the "equivalent of recklessly disregarding" a serious risk of harm to the prisoner. *Id*. at 836. The test is a subjective one which requires proof that the prison official "acted or failed to act despite his [or her] knowledge of a substantial risk of serious harm." *Id*. at 842. Deliberate indifference is not a "should have known" standard. *Weaver v. Shadoan*, 340 F.3d 398, 410-11 (6th Cir. 2003) ("It is insufficient for a plaintiff to allege that there existed a danger that an officer should have been aware of."). Accordingly, "deliberate indifference" means that the

14

official actually knew of "a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it."  *Farmer*, 511 U.S. at 847.

### a. Defendant Winn is not entitled to summary judgment on Plaintiff's Eighth Amendment claim against him

In his verified complaint,[4] Plaintiff alleges that Winn failed to protect him in violation of his Eighth Amendment rights when Winn, as acting Warden at SRF, transferred him and his two prior assailants, Miller and Schneider, to JCF, where he was assaulted shortly thereafter by two unknown individuals.  (ECF 1 at Pg. Id. 116-20, ¶¶ 18-24, 34-48.)  Although Plaintiff's complaint discusses the transfer to JCF of both Miller and Schneider, allegedly members of the same gang, implying that the presence of each led to his assault there, Plaintiff specifically states, "It's my belief prisoner Geoffrey Miller – MDOC # 687305 had put a 'hit' on me and had me assaulted by two unknown individuals."  (ECF 1 at ¶ 43.)  Defendants assert, however, that these allegations fail to establish an Eighth Amendment violation against Winn because no evidence exists that a prisoner named Geoffrey Miller was incarcerated at SRF or JCF during the relevant time periods, or assaulted Plaintiff.  Further, they contend that when Winn approved Plaintiff's transfer to JCF, Schneider had not yet been transferred, and that even if

---

[4] Plaintiff's verified complaint meets the requirements of an unsworn declaration because it states that the statements made therein are true and correct under penalty of perjury.  28 U.S.C. § 1746(2).

Schneider's transfer to JCF was improper, Plaintiff failed to establish that Winn

knew of and disregarded a substantial risk to Plaintiff's safety because Schneider

was removed from Plaintiff's housing unit before the assault.  (ECF 33 at Pg. Id.

314-16; ECF 35 at Pg. Id. 381-83.)

In support of their argument contesting Plaintiff's allegation that Miller's

transfer to JCF and residence in the general population posed a substantial risk of

harm to Plaintiff, Defendants have offered the affidavits of Winn, Carolle Walker,

Litigation Coordinator at SRF, and Kimberly Napier, Litigation Coordinator at

JCF, each of whom attest that prison records identify no prisoner named Geoffrey

Miller (#687305) at SRF or JCF during the relevant time periods.  (ECFs 33-4, 33-

5 & 33-7.)  But Plaintiff has offered competing statements, in both his verified

complaint and in his response to Defendants' motion for summary judgment,[5] that

Miller was an inmate at SRF, assaulted him there on October 17, 2013, was

transferred out of SRF on July 10, 2014, and was in the general population with

him at JCF when the July 30, 2014 assault occurred there, and that as acting

Warden of SRF and member of the Security Classification Committee, Winn

approved of the transfers with knowledge of the past assaults.  (ECF 1 at ¶¶ 4, 18-

22, 34-36, 41-43; ECF 35 at 382-84.)  And Winn himself attests that as acting

[5] Plaintiff's response to Defendants' motion for summary judgment also meets the
requirements of an unsworn declaration because it states that the statements made
therein are true and correct under penalty of perjury.  28 U.S.C. § 1746(2).

16

Warden at SRF, it was his responsibility to approve and sign transfer orders, and that he approved and signed Plaintiff's transfer order to JCF.  (ECF 33-4.)  Viewing this evidence in the light most favorable to Plaintiff, Plaintiff has established a genuine factual dispute that Miller existed, that Miller's presence in the general population at JCF posed a substantial risk of harm to Plaintiff, and that Winn knew of and failed to abate the risk when he transferred both Plaintiff and Miller to JCF.

The same is true with regard to Plaintiff's allegations involving Schneider. Although Plaintiff specifically asserts in his complaint that a "hit" by Miller led to his assault, Plaintiff's general allegations that Schneider assaulted him at SRF not long before Winn transferred both to JCF, Miller and Schneider were members of the same gang, and he was assaulted again at JCF the day after Schneider was removed from his housing unit, demonstrate that he also claims Schneider's presence at JCF may have contributed to his July 30, 2014 assault.  (ECF 1 at ¶¶ 7-9, 18-22, 24, 34-43.)  Viewing the evidence in the light most favorable to Plaintiff, the Court should find a genuine factual dispute as to both the substantial harm posed to Plaintiff by Schneider's presence at JCF, as well as Winn's knowledge and disregard of that harm.  Again, Winn admits that as acting Warden at SRF, he approved and signed transfers, including Plaintiff's to JCF, and that "[Plaintiff's] claims – that prisoner Justin Schneider, #666563, assaulted him at

17

Saginaw on July 5, 2014 and that Schneider was transferred from [SRF] to [JCF] on July 24, 2014 . . . appear to be accurate." (ECF 33-4 at Pg. Id. 363.) Further, Plaintiff states, in response to Defendants' argument that Schneider's removal from Plaintiff's housing unit before the July 30 assault extinguished any harm posed by his transfer to JCF, that Schneider's gang friends witnessed the removal and put a target on Plaintiff's back. (ECF 35 at Pg. Id. 382.) Accordingly, the Court should conclude that Plaintiff has presented sufficient evidence to create a genuine factual dispute regarding his Eighth Amendment claim against Winn, and deny summary judgment on that basis.

> **b.    Defendant Roth is entitled to summary judgment, in part, on Plaintiff's Eighth Amendment claim against him**

Turning to Plaintiff's Eighth Amendment claim against Roth, he alleges that at their meeting upon his arrival at JCF, Roth noted his prior assaults at SRF, but failed to warn him of the potential danger he faced in the general population at JCF as a result of the transfer of a lot of inmates from SRF to JCF. (ECF 1 at Pg. Id. 115-17, ¶¶ 24-33.) In support of their motion for summary judgment, Defendants assert that these allegations are insufficient to support an Eighth Amendment claim because: (1) no evidence exists that a prisoner named Geoffrey Miller resided at either SRF or JCF during the relevant times; and (2) "[Plaintiff] does not allege that he told Inspector Roth that he saw Schneider at [JCF], and Schneider was not

18

yet at [JCF] when [Plaintiff] was transferred there or when [Plaintiff] purportedly met with Inspector Roth on July 18, 2014." (ECF 33 at Pg. Id. 316-19.)

As provided above, Plaintiff has established a genuine factual dispute regarding Miller's existence, assault of Plaintiff at SRF in October 2013, and transfer to JCF, thus satisfying the objective prong of his Eighth Amendment claim against Roth as to the allegations involving Miller. Further, Plaintiff has offered verified statements, in contravention of Roth's assertions that he was unaware of any kite from Plaintiff expressing fear of Miller (ECF 33-6), that he immediately notified Roth, ARUS Parsons, and Officer Mills of the potential danger he faced with Miller in the general population, but that his notification was ignored (ECF 1 at Pg. Id. 115-18, 135-36). Viewing this competing evidence in the light most favorable to Plaintiff, the Court should find that he has also established a factual dispute regarding Roth's knowledge and disregard of the substantial risk Miller's alleged presence in the general population at JCF posed to his safety, and therefore deny summary judgment of Plaintiff's Eighth Amendment claim against Roth as it relates to Miller.

The Court should, however, summarily dismiss Plaintiff's Eighth Amendment claim against Roth as it relates to the danger Schneider allegedly posed to Plaintiff's safety. Roth attests that Plaintiff never told him of the danger, and Plaintiff does not state, in either his verified complaint or his response to

Defendants' motion, that he did so.  Further, Plaintiff's general statements that

Roth knew he had been assaulted at SRF and that a number of prisoners were being

transferred from SRF to JCF fail to establish a triable issue as to Roth's knowledge

and disregard of the potential risk posed by Schneider, or for that matter, posed by

anyone in particular.

### 3. On the same basis, Plaintiff has failed to establish that Roth was personally involved in any alleged unconstitutional behavior involving Schneider

"It is well settled that to state a cognizable Section 1983 claim, the plaintiff

must allege some personal involvement by each of the named defendants."

*Bennett v. Schroeder*, 99 F. App'x 707, 712-13 (6th Cir. 2004).  "In the specific

context of a § 1983 action, the non-moving party must demonstrate a genuine issue

of material fact as to the following two elements: 1) the deprivation of a right

secured by the Constitution or laws of the United States and 2) [that] the

deprivation was caused by a person acting under color of state law."  *Miller v.*

*Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) (quotation marks and citations

omitted).  Defendants assert that the Court should dismiss Plaintiff's Eighth

Amendment claim against Roth as it relates to Schneider because Plaintiff has

offered no evidence that he told Roth of Schneider's presence at JCF, and because

Schneider was not yet at JCF when Plaintiff and Roth purportedly met.  (ECF 33 at

Pg. Id. 319-20.)  As provided above, Plaintiff has failed to establish a genuine

factual dispute as to Roth's personal involvement in any alleged unconstitutional behavior related to Schneider, and Roth is entitled to summary judgment of Plaintiff's Eighth Amendment claim against him to the extent that the claim is based on any alleged risk of harm posed by Schneider.

### 4. Defendants are not entitled to summary judgment on the basis of qualified immunity

Finally, Defendants assert entitlement to summary judgment on the basis of qualified immunity. The doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stoudemire v. Mich. Dep't of Corrections*, 705 F.3d 560, 567 (6th Cir. 2013) (quotation marks and citations omitted). "In resolving a government official's qualified immunity claims, we look to whether (1) the facts that the plaintiff has alleged or shown establish the violation of a constitutional right, and (2) the right at issue was 'clearly established' at the time of the alleged misconduct." *Id.* "A defendant bears the initial burden of putting forth facts that suggest that he was acting within the scope of his discretionary authority." *Id.* at 568. But ultimately, "the burden of proof is on the plaintiff to show that the defendants are not entitled to qualified immunity." *Id.* (quotation marks and citation omitted). A claimant may defeat the defense of qualified immunity by producing "sufficient evidence

after discovery to prove the existence of genuine issues of material fact regarding the issue of immunity, or if the undisputed facts show that defendant violated his clearly established rights." *Noble v. Schmitt*, 87 F.3d 157, 161 (6th Cir. 1996).

As provided above, Roth is entitled to summary judgment of Plaintiff's Eighth Amendment claim against him to the extent that the claim is based on any alleged risk of harm posed by Schneider. Thus, his qualified immunity argument will be reviewed with regard to the allegations involving Miller only.

In support of their argument, Defendants state only that "[Plaintiff] has not alleged sufficient facts and supported his allegations by adequate evidence to demonstrate that Warden Winn and Inspector Roth acted unreasonably, nor has he shown that his Eighth Amendment constitutional rights were even violated, so they are entitled to qualified immunity." (ECF 33 at Pg. Id. 323.)   The undersigned finds this argument cursory and inadequately developed.

Regardless, Defendants are not entitled to qualified immunity. The right of a prisoner to be protected from violence perpetrated by other prisoners is a clearly established right. *See Farmer*, 511 U.S. at 832-33. And questions of fact remain regarding Plaintiff's Eighth Amendment claims and Defendants' deliberate indifference to the alleged substantial risk of harm posed to Plaintiff by Miller's and Schneider's presence at JCF.

### E.    Conclusion

The Court should **GRANT IN PART** and **DENY IN PART** Defendants' motion for summary judgment.  (ECF 33.)  Roth is entitled to summary judgment of Plaintiff's Eighth Amendment claim against him to the extent that the claim is based on any alleged risk of harm posed by Schneider.  In all other respects, summary judgment should be **DENIED**.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  November 12, 2019                    s/*Anthony P. Patti*
                                             Anthony P. Patti
                                             UNITED STATES MAGISTRATE JUDGE

## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on November 12, 2019, electronically and/or by U.S. Mail.

                                             s/Michael Williams
                                             Case Manager for the
                                             Honorable Anthony P. Patti