UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES ROBERT BATES,

              Plaintiff,                      Case No. 2:16-cv-14324
                                           District Judge Sean F. Cox

v.                                      Magistrate Judge Anthony P. Patti

O'BELL THOMAS WINN and
JAMES ROTH,

              Defendants.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56(a) (ECF No. 63)

**I.**    **RECOMMENDATION**: The Court should **GRANT IN PART** and **DENY IN PART** Defendants' motion for summary judgment.  (ECF No. 63.)

**II.**    **REPORT**

    **A.**    **Background**

        **1.**    **Factual Background**

        Plaintiff James Robert Bates (#54580-039) is currently incarcerated at Sheridan FCI in Sheridan Oregon.  *See* www.bop.gov, "Inmate Locator," (#54580-039).  On December 12, 2016, while incarcerated at Midland County Jail in Midland, Michigan, Plaintiff filed the instant lawsuit under 42 U.S.C. § 1983, alleging that Defendants O'Bell Thomas Winn, Warden of the Saginaw

Correctional Facility (SRF) in Freeland, Michigan, and James Roth, a now-retired Inspector at G. Robert Cotton Correctional Facility (JCF) in Jackson, Michigan, failed to protect him from assault by fellow inmates in violation of his Eighth Amendment rights.  (ECF No. 1.)

The underlying facts, as alleged by Plaintiff in his complaint and as found in the record evidence, are as follows.  Plaintiff alleges that on October 17, 2013, at SRF, he was assaulted by fellow prisoner Geoffrey Miller (#687305), "a well known gang member of the notorious 'Gangster Disciples.'"  (ECF No. 1, PageID.116-117, 133, ¶¶ 18-20.)  At his deposition, Plaintiff mentioned a second attacker for the first time, testifying that Miller struck him from behind before Miller's friend struck him in the face.  (Pl. Dep. Tr., ECF No. 63-4, PageID.623-625.)  According to Plaintiff, in the aftermath of the assault, an unknown prison guard informed him of Miller's name and MDOC number.  (ECF No. 63-4, PageID.622.)  Miller supposedly received a misconduct for the assault, while Plaintiff was placed in protective segregation for one day but did not need medical treatment.  (ECF No. 63-4, PageID.623.)

On July 5, 2014, Plaintiff was again assaulted at SRF by fellow prisoner Justin Schneider (#666563), also a member of the Gangster Disciples.  (ECF No. 1, PageID.115-117, 131, ¶¶ 7-8.)  Schneider's assault generated a thorough Critical Incident Report (CIR).  (CIR, ECF No. 63-5.)  Winn signed the CIR and identified

his signature on the document at his deposition, stating "my signature is that I reviewed this document." (ECF No. 63-5, PageID.637; ECF No. 64-9, PageID.826-827, 840.) As provided in the CIR documents, an officer observed Schneider strike Plaintiff in the head several times before another officer activated his TASER and persuaded Schneider to stop. (ECF No. 63-5, PageID.637.) Plaintiff required treatment at a local hospital for a puncture wound to his head. (ECF No. 63-5, PageID.647.) Nonetheless, Plaintiff was returned to SRF's general population later that same day (ECF No. 1, PageID.132, ¶ 10), while Schneider was "escorted to segregation" (ECF No. 63-5, PageID.637.) On July 15, 2014, a hearing was held, and Schneider was found guilty of a Class I Misconduct. (Class I Misconduct Hearing Report, ECF No. 64-4.)

Plaintiff submitted a grievance upon his return to the general population at SRF, complaining that the prison employees who had returned him to general population were "trying to set [him] up to be killed . . . ." (ECF No. 1, PageID.141, "Prisoner/Parolee Grievance Form.") As a result, SRF staff conducted a "Request for Protection/Investigation Report" to determine whether Plaintiff needed to be moved within SRF or transferred out of SRF. (Request for Protection/Investigation Report, ECF No. 63-6.) The Report noted that Plaintiff had previously requested protective custody while incarcerated at a different facility, but that this was his first such request at SRF. (ECF No. 63-6.) At the

3

time, Plaintiff was unable to identify his attacker when interviewed by

investigators, provided no additional witnesses to investigators, and stated to a

Sergeant shortly after the assault that he would be fine remaining in general

population.  (ECF No. 63-6.)  Winn concluded upon his review of the Report that:

"[Plaintiff] has failed to provide enough information that can be verified by staff.

[Plaintiff] can be managed in [general population] at this time."  (ECF No. 63-6.)

Notably, Plaintiff's deposition testimony conflicts with the information he

provided during the above investigation.  For example, Plaintiff testified at his

deposition that Schneider initially approached him from the front and stated,

"Come here for a minute, let me talk to you for a minute[.]"  (ECF No. 63-4,

PageID.626.)  Further, he stated that he knew Schneider because the pair had

"exchanged some words" a few days before the assault.  (ECF No. 63-4,

PageID.626.)

Plaintiff alleges that while in segregation following the Schneider assault, he

witnessed Miller being transferred out of SRF.  (ECF No. 1, PageID.116-117, 133,

¶¶ 18-19.)  The next day, July 11, 2014, Winn signed a Security Classification

Screen concerning Plaintiff, checking boxes indicating that Plaintiff was not an

escape or assault risk, seemingly to other prisoners (Security Classification Screen,

ECF No. 63-8, PageID.680), and then signed an order transferring Plaintiff to JCF

on July 15, 2014 (ECF No. 63-8, PageID.681).  A transfer coordinator prepared the

4

transfer order, which was approved by an MDOC Correctional Facilities

Administrator before Winn's signature.  (ECF No. 63-8, PageID.681.)  The

transfer order did not contain a Special Offender Problem Notice (SPON), but did

indicate that Plaintiff required "alternate placement in lieu of [protective custody]."

(ECF No. 63-8, PageID.681.)

On July 17, 2014, Plaintiff was transferred from SRF to JCF.  (ECF No. 1,

PageID.134, ¶ 24.)  Upon arrival at JCF, Plaintiff met with Roth.  The complaint

alleges that Roth noted he had been assaulted a couple of times and asked if he was

okay, which gave Roth the opportunity to inform him that a lot of inmates were

being transferred from SRF to JCF and that he may be in danger.  (ECF No. 1,

PageID.115-117, 134-135, ¶¶ 24-31.)  Plaintiff testified to the same at his

deposition, and confirmed that Roth never told him he could be in danger if he

entered the general population.  (ECF No. 63-4, PageID.628-629.)

The next day, Plaintiff spotted Miller in general population at JCF, and

wrote a kite to Roth, but the kite was ignored.  (ECF No. 1, PageID.135-136, ¶¶

34-36; ECF No. 63-4, PageID.629-630, 632.)  Then, on July 24, 2014, Schneider

was transferred from SRF to JCF and placed six cells down from Plaintiff.  (ECF

No. 1, PageID.136, ¶ 37.)  Plaintiff alleges that he notified the Parole Board of

Michigan and assistant Resident Unit Supervisor (ARUS) Parsons, and that

Corrections Officer Mills removed Schneider from the unit on July 29, 2014.

(ECF No. 1, PageID.136, ¶¶ 37-40.)  When Schneider was removed from general

population, JCF personnel reviewed documentation of Schneider's July 5 assault

on Plaintiff and generated a SPON between Schneider and Plaintiff, to ensure they

would not be housed in the same facility.  (ECF No. 1, PageID.145, Step I

Grievance Response.)

　　　Nevertheless, Miller allegedly remained with Plaintiff in general population,

and on July 30, 2014, Plaintiff was found in his cell with injuries.  (ECF No. 1,

PageID.137-138, ¶¶ 41-46; CRI, ECF No. 63-11, PageID.696.)  Plaintiff alleges

that two assailants conducted the assault, but his description of the attack has

varied.  During JCF's initial investigation, Plaintiff "stated he was assaulted in his

room for an unknown reason by two black prisoners, one bald and another wearing

a mask."  (ECF No. 63-11, PageID.696.)  But Plaintiff testified at his deposition

that the assailants were "both wearing stocking caps or pantyhose over [their]

faces" and that "they had a whole bunch of hair . . . ."  (ECF No. 63-4,

PageID.633.)  Plaintiff's theory as to who initiated the assault has also varied.

Plaintiff alleges in his complaint that Miller put a "hit" on him (ECF No. 1,

PageID.137, ¶ 43), but testified at his deposition that Schneider provoked the

assault by yelling "[y]ou all know what to do.  Get at [Bates]" to gang associates as

he was being removed from general population (ECF No. 63-4, PageID.632).

Following the July 30, 2014 assault, Plaintiff was placed in temporary segregation because he could not identify the assailants.  (ECF No. 64-6, PageID.810.)  JCF personnel recommended that, in lieu of a SPON (which could not be generated because Plaintiff's assailants remained unknown), Plaintiff be transferred to a different facility (ECF No. 1, PageID.145), and on August 7, 2014, he was transferred to Carson City Correctional Facility (DRF) (Transfer Order, ECF No. 63-8, PageID.684).  Plaintiff requested protective custody again while at DRF, which triggered another transfer to Alger Correctional Facility (LMF) in lieu of protection on August 27, 2014.  (ECF No. 63-8, PageID.688.)

### 2.     Procedural History

Defendants filed an initial motion for summary judgment on June 3, 2019 (ECF No. 33), in response to which I recommended that the Court grant summary judgment on Plaintiff's Eighth Amendment claim against Roth to the extent the claim was based on the allegations regarding Schneider, but deny summary judgment on the additional claims (ECF No. 42, PageID.470).  The Court adopted in full my report and recommendation.  (ECF No. 49.)  Thus, three of Plaintiff's Eighth Amendment deliberate indifference claims remain: (1) Roth as to Miller; (2) Winn as to Miller; and (3) Winn as to Schneider.

### 3.     Instant Motion

On March 15, 2021, Defendants filed a motion for leave to file a second

dispositive motion (ECF No. 62), which I granted as unopposed by text-only order.

In the instant motion, filed the same day, Defendants assert entitlement to

summary judgment on all three remaining claims, arguing that neither Winn nor

Roth had notice that Plaintiff was at risk of violence from Geoffrey Miller, and that

Winn did not violate Plaintiff's Eighth Amendment rights as it relates to

Schneider's transfer.  (ECF No. 63, PageID.583-596.)  Plaintiff, now represented

by counsel (ECF No. 56), filed his response in opposition on April 5, 2021,

asserting that "[t]riable issues of fact exist as to whether [he] was subjected to a

substantial risk of serious harm by his transfer to Cotton, and by Miller and

Schneider's subsequent transfer to Cotton, and whether Warden Winn and

Defendant Roth knew of the risk that the transfers presented but failed to take

reasonable steps to insure [sic] that their wards were not transferred there

together."  (ECF No. 64, PageID.755-756.)  Defendants filed their reply brief on

April 16, 2021.  (ECF No. 66.)

The Court held a hearing on August 4, 2021, and took the matter under

advisement.

**B.    Standard**

Under Fed. R. Civ. P. 56, "[t]he court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is

material if it might affect the outcome of the case under governing law.  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court "views the evidence,

all facts, and any inferences that may be drawn from the facts in the light most

favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95

F. App'x 132, 135 (6th Cir. 2004).

      "The moving party has the initial burden of proving that no genuine issue of

material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

(6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing

that if a party "fails to properly address another party's assertion of fact," the court

may "consider the fact undisputed for purposes of the motion").  "Once the moving

party satisfies its burden, 'the burden shifts to the nonmoving party to set forth

specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d

446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp.*, 475 U.S. 574, 587 (1986)).

      The nonmoving party "must make an affirmative showing with proper

evidence in order to defeat the motion."  *Alexander v. CareSource*, 576 F.3d 551,

558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*,

432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must . . . do more than

simply show that there is some metaphysical doubt as to the material facts[.] . . .

9

[T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).  "Such evidence submitted in opposition to a motion for summary judgment must be admissible." *Alexander*, 576 F.3d at 558 (internal quotation marks and citations omitted).  In other words, summary judgment is appropriate when the motion "is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case[.] . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

## C.    Discussion

### 1.    Eighth Amendment failure to protect

Under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).  The Supreme Court has set forth two requirements to show a violation of the Eighth Amendment based on failure to protect – one objective and one subjective.  "First, the deprivation alleged must be, objectively, 'sufficiently serious[.]'" *Farmer*, 511 U.S. at 834.  That is, the prisoner must show that "'he is

10

incarcerated under conditions posing a substantial risk of serious harm.'" *Bishop*

*v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer*, 511 U.S. at 833).

Second, the prisoner must show that the prison official had "a sufficiently

culpable state of mind," meaning that the defendant must be deliberately

indifferent to prisoner health or safety. *Farmer*, 511 U.S. at 834 (quotation marks

and citation omitted). On the continuum of conduct, deliberate indifference is

something greater than mere negligence and less than purposeful or knowing

conduct—it is the "equivalent of recklessly disregarding" a serious risk of harm to

the prisoner. *Id*. At 836. The test is a subjective one which requires proof that the

prison official "acted or failed to act despite his [or her] knowledge of a substantial

risk of serious harm." *Id*. at 842. Deliberate indifference is not a "should have

known" standard. *Weaver v. Shadoan*, 340 F.3d 398, 410-11 (6th Cir. 2003) ("It is

insufficient for a plaintiff to allege that there existed a danger that an officer should

have been aware of."). Accordingly, "deliberate indifference" means that the

official actually knew of "a substantial risk of serious harm and disregard[ed] that

risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

> **2.     The Court should grant summary judgment on Plaintiff's
> claims that Roth and Winn acted with deliberate
> indifference by failing to protect him from the danger posed
> by Miller**

In his complaint, Plaintiff alleges that Winn failed to protect him from the

substantial risk of harm posed by Miller when he transferred both from SRF to JCF

11

(ECF No. 1, PageID.116-117, 133-138, ¶¶ 18-20, 24, 34, 43-45, 47-48), and that Roth did so by failing to warn him of the danger, or act upon his report to Roth that Miller's presence left him vulnerable to assault (ECF No. 1, PageID.116-117, 133-138, ¶¶ 18-20, 25-36, 43-45, 47-48).

Even viewing the record evidence in a light most favorable to Plaintiff, he has failed to establish a genuine issue of fact regarding Miller's existence and, accordingly, both *Farmer's* objective and subjective prongs. *See Farmer*, 511 U.S. at 834, 842, 847. Although I previously recommended denial of summary judgment on Plaintiff's Eighth Amendment claims as to Miller, in part on the basis of Plaintiff's statements regarding Miller's existence in his verified complaint and response to Defendants' initial summary judgment motion (*see* ECF No. 42, PageID.463-464), the record evidence now overwhelmingly contradicts Plaintiff's assertions. Following the discovery period, Plaintiff has produced nothing documenting the October 2013 Miller assault, despite Plaintiff's testimony that Miller received a misconduct for the assault, and that he was placed in protective segregation for one day. (ECF No. 63-4, PageD.624.) In contrast, Winn, Carolle Walker, Litigation Coordinator at SRF, and Kim Napier, Litigation Coordinator at JCF, have all attested to finding no prisoner named Geoffrey (or Jeffrey/Jeffery) Miller with a prisoner ID of #687305 in the Michigan Department of Corrections (MDOC) system. (Winn Affidavit, ECF No. 33-4, PageID.363-364, ¶ 5; Walker

Affidavit, ECF No. 33-5, PageID.367-368, ¶ 5; Napier Affidavit, ECF No. 33-7, PageID.375-376, ¶ 5.)  Thus, Plaintiff's assertions appear to be speculative, at best. *See Lee*, 432 F. App'x at 441 ("The nonmovant must . . . 'do more than simply show that there is some metaphysical doubt as to the material facts[.]' . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a 'genuine' dispute.") (quoting *Matsushita,* 475 U.S. at 586).

On the basis of these assertions, the undersigned conducted his own search through the MDOC Offender Tracking Information System (OTIS), and also found no evidence of Geoffrey Miller's (#687305) existence.  *See* mdocweb.state.mi.us/otis2/otis2.aspx.  At the motion hearing, Plaintiff's counsel agreed that the accuracy of OTIS could not reasonably be questioned, and that she could not disagree with the Court taking judicial notice of the OTIS search for Geoffrey Miller and its results.  Further, Plaintiff's counsel confirmed that if the Court did take such judicial notice, it would defeat Plaintiff's Eighth Amendment claims as to Miller.

Accordingly, the Court should take judicial notice of Geoffrey Miller's (#687305) status on OTIS and grant summary judgment on Plaintiff's Eighth Amendment claims against Winn and Roth as to Miller.  *See Ward v. Wolfenbarger*, 323 F.Supp.2d 818, 821-22 n. 3 (E.D. Mich. 2004) (Court is

13

permitted to take judicial notice of OTIS).  Should the Court agree, it need not

address Defendants' additional arguments regarding *Farmer's* subjective prong,

*Farmer*, 511 U.S. at 842, as to these claims.

> **3.   Defendant Winn has failed to establish entitlement to summary judgment on Plaintiff's Eighth Amendment claim against him as to the danger posed by Schneider**

> **a.   Objective prong**

Plaintiff alleges that Winn acted with deliberate indifference by transferring

him and Schneider to the same facility despite their assaultive history.  (ECF No. 1,

PageID.133-138, ¶¶ 22, 24, 37, 43-44, 47-48.)  The Court should first find that, as

to this claim, Plaintiff has demonstrated a genuine issue of material fact regarding

the objective prong of *Farmer*—that Schneider's transfer to JCF after his own

transfer to the same facility posed a substantial risk of serious harm.  *See Farmer*,

511 U.S. at 834; *Bishop*, 636 F.3d at 766.  It is uncontroverted that Schneider

committed an "assault resulting in serious physical injury" against Plaintiff at SRF

on July 5 (ECF No. 64-64, PageID.780), that Winn approved Plaintiff's subsequent

July 17 transfer to JCF (ECF No. 63-8, PageID.681), and that Winn approved

Schneider's July 24 transfer to JCF (ECF No. 63-13, PageID.731).

And Plaintiff alleges, in his verified complaint, that Schneider was housed

six cells down from him at JCF (ECF No. 1, PageID.136, ¶ 37), that he and

Schneider remained in close proximity until Schneider was removed from general

population on July 29, and that he was assaulted in his cell the very next day (ECF

No. 1, PageID.136-137, ¶¶ 40, 43).  Nonetheless, Defendants contend that "there is

no evidence that Schneider was responsible for the assault at JCF" because

Plaintiff alleged Miller put a hit on him, and Schneider had already been removed

from Plaintiff's housing unit.  (ECF No. 63, PageID.594 (citing ECF No. 1,

PageID.117, 143).)  But as I stated in my previous Report and Recommendation:

> Plaintiff's general allegations that Schneider assaulted him at SRF not
> long before Winn transferred both to JCF, Miller and Schneider were
> members of the same gang, and he was assaulted again at JCF the day
> after Schneider was removed from his housing unit, demonstrate that
> he also claims Schneider's presence at JCF may have contributed to
> his July 30, 2014 assault.

(ECF No. 42, PageID.464.)  And at his deposition, Plaintiff testified that Schneider

had provoked the July 30 assault by exclaiming to gang associates while being

removed: "You all know what to do.  Get after him."  (ECF No. 63-4,

PageID.632.)  Thus, the Court should find that Plaintiff has produced evidence

sufficient to demonstrate a genuine dispute regarding whether Schneider's transfer

to JCF posed a substantial risk of serious harm.  *Farmer*, 511 U.S. at 834; *Bishop*,

636 F.3d at 766.

### b.    Subjective prong

Viewing the evidence in the light most favorable to Plaintiff, *Pure Tech Sys.,*

*Inc.*, 95 F. App'x at 135, the Court should find that the same is true with regard to

*Farmer's* subjective prong—that Winn knew of and disregarded the substantial

risk of harm posed by Schneider's transfer to JCF, *see Farmer*, 511 U.S. at 847.  In his argument, Winn first denies any responsibility for the fact that no SPON, which would have been included in Plaintiff's transfer papers (*see* ECF No. 64-10, PageID.848, ¶ H), was generated following Schneider's July 5 assault of Plaintiff. (ECF No. 63, PageID.591-592.)  Defendants contend that, per applicable MDOC policy, "investigations are required" before a SPON can be issued, and "[u]ntil the Warden . . . receive[s] the notice that a SPON should be issued, Defendant Winn does not have a duty, or even an option, to enter SPON information in the system." (ECF No. 63, PageID.591-592.)  Hence, because Plaintiff "failed to provide enough information" during the formal investigation into his early July request for protection, Winn was supposedly powerless to enter a SPON between Plaintiff and Schneider.  (*See* ECF No. 63-6, PageID.650.)

Though the applicable SPON policy[1] does state that "[i]t is not intended that a SPON be issued . . . when an offender cannot or will not give sufficient information to investigate the need for a SPON[,]" that passage ends with "*if the claim cannot otherwise be substantiated*."  (MDOC PD 03.03.100, ECF No. 64-10, PageID.848, ¶ F (emphasis added.))  <u>Plaintiff's need for protection from Schneider could otherwise be substantiated</u>—Winn signed a CIR chronicling Plaintiff's

---

[1] The policy attached to Plaintiff's response brief (ECF No. 64-10) was that in effect at the time of the subject transfers.  It has since been superseded.

injuries from the July 5 assault and identifying Schneider as the assailant (ECF No. 63-5; ECF No. 64-9, PageID.826).  Further, the SPON policy states that "*[a]ll staff are responsible for initiating a SPON when specific reliable information is brought to their attention which warrants issuance pursuant to this policy.*"  (PD 03.03.100, ECF No. 64-10, PageID.847, ¶ E) (emphasis added.)  A SPON is "warranted" when "there is a specific act . . . of violence to or by an offender" (PD 03.03.100, ECF No. 64-10, PageID.84, ¶ E1), as there was here between Plaintiff and Schneider.  And Winn admitted at his deposition that the aforementioned CIR "constitute[d] specific reliable information" such that "a SPON should have been created . . . ."  (ECF No. 64-9, PageID.844-845.)  Thus, it appears that Winn *could* have generated a SPON between Schneider and Plaintiff in early July 2014, especially since Winn had, by his own admission, "the ultimate responsibility for prisoner protection and safety . . . ."  (ECF No. 64-9, PageID.840.)

Regardless, even assuming Winn lacked responsibility for issuing a SPON following the July 5 assault, there is considerable evidence in the record from which a reasonable jury could conclude that Winn knew of and disregarded a substantial risk to Plaintiff's safety when he approved Schneider's transfer to JCF on July 15, 2014.  Although Plaintiff's transfer order from SRF to JCF did not include a SPON, and Schneider's transfer order did, but did not name Plaintiff as a subject of the SPON (*see* ECF No. 63, PageID.593; ECF No. 63-8, PageID.681;

17

ECF No. 63-13, PageID.731), Schneider's transfer order, signed by Winn,
references Schneider's assault against Plaintiff, stating, "Last Major Misconduct:
Aslt Resulting in Serious Physical Injury – Prisoner Victim – 07/05/2014" (ECF
No. 63-13, PageID.731).  And, as discussed above, Winn signed off on the CIR
documenting Schneider's July 5 assault on Plaintiff (ECF No. 63-5, PageID.637),
as well as Plaintiff's Request for Protection, which did not name Schneider, but
discussed the assault (ECF No. 64-3).  Further, Winn identified his signature on the
CIR and testified that he held ultimate responsibility for prisoner safety (ECF No.
64-9, PageID.826-827, 840), despite his arguments in the motion and at the hearing
that he only signed off on others' compilation of the information in Schneider's
transfer order (*see* ECF No. 63, PageID.591-596).  From the above, as well as the
timeframe of events: Schneider's assault on Plaintiff (July 5), Winn's signature on
the CIR (July 5), Winn's approval of Plaintiff's transfer to JCF (July 15), and
Winn's approval of Schneider's transfer to JCF (July 23), a reasonable jury could
infer that, at the time Winn approved Schneider's transfer to JCF, Winn was aware
of the substantial risk of harm that Schneider would pose to Plaintiff at JCF, and
disregarded that risk by approving Schneider's transfer.  Moreover, Defendants
present no case law with similar circumstances to the contrary.  *See Taylor v.
MDOC*, 69 F.3d 76 (6th Cir. 1995) (reversing grant of summary judgment where

warden delegated transfer responsibilities without implementing procedures that would protect vulnerable inmates from dangerous transfers).[2]

### D.    Conclusion

The Court should **GRANT IN PART** and **DENY IN PART** Defendants' motion for summary judgment.  (ECF No. 63.)  Roth and Winn are entitled to summary judgment on Plaintiff's Eighth Amendment claims against them to the extent that the claims are based on any alleged risk of harm posed by Miller. However, Winn is not entitled to summary judgment on Plaintiff's Eighth Amendment claim against him as it relates to the substantial risk of serious harm posed by Schneider.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

---

[2] Specifically, the Sixth Circuit in *Taylor* held, "The record shows that the prisoner has introduced sufficient evidence to present a jury question about (1) whether Warden Foltz knew that conditions throughout the Michigan prison system and particularly at Camp Pugsley posed a substantial risk of serious harm to prisoners like plaintiff; (2) whether he knew that there was effectively no procedure in place to protect vulnerable inmates from being transferred to dangerous conditions; and (3) whether in the face of this knowledge he acted with deliberate indifference— that is, disregarded a risk of harm of which he was aware—by failing to adopt reasonable policies to protect inmates like Taylor.  The prisoner has, therefore, introduced sufficient evidence to defeat a motion for summary judgment on his Eighth Amendment claim." *Taylor*, 69 F.3d at 77.

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc*.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc*.  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Dated:  October 28, 2021

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE